# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RIKKI D. KNIGHT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-18-12-SPS |

## OPINION AND ORDER

The claimant Rikki D. Knight requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-seven years old at the time of the administrative hearing (Tr. 40). She completed high school, vocational training in nursing, and two years of college and has worked as a licensed practical nurse and nursing home administrator (Tr. 47, 64, 213). The claimant alleges that she has been unable to work since June 21, 2013, due to a herniated, ruptured, and bulging disc; lumbar disc compression; diabetes; hypertension; bipolar disorder with anxiety and panic attacks; psoriatic arthritis; rheumatoid arthritis; right hip sciatica; psoriasis; and fibromyalgia (Tr. 39, 212).

## Procedural History

In December 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 191-94). Her application was denied. ALJ B.D. Crutchfield conducted an administrative hearing and determined that the claimant was not disabled from her alleged onset date of January 21, 2013, through her date last insured of December 31, 2014, in a written opinion dated January 13, 2017 (Tr. 15-29). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found the claimant retained the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.,* she could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently; sit, stand, or walk six hours out of an eight-hour workday with normal breaks; frequently climb ramps or stairs, balance, kneel, crouch, and crawl; and occasionally stoop; but could not climb ladders, ropes, or scaffolds (Tr. 21). Due to psychologically-based limitations, the ALJ found the claimant could perform simple and some complex (defined during the hearing as semi-skilled) tasks with routine supervision; could relate to supervisors, co-workers, and the general public on a superficial work-type basis only; and could adapt to a work setting and some forewarned changes in a usually stable work setting (Tr. 21). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *e. g.*, small product assembler, poultry processor, and inspector packer (Tr. 27-29).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate the opinion of treating physician Dr. Douglas Brown, and the Court agrees.

The ALJ found that the claimant had the severe impairments of degenerative disc disease and affective disorder, but that her diabetes, hypertension, psoriatic arthritis, rheumatoid arthritis, right hip sciatica, psoriasis, and fibromyalgia were nonsevere (Tr. 18-19). The relevant medical records reveal that Dr. Nelson Onaro treated the claimant for,

*inter alia*, anxiety, low back pain, diabetes, and hypertension, from July 2013 through October 2013 (Tr. 330-45). Dr. Onaro performed one physical examination during this and it was normal (Tr. 337-38). Dr. Brown then treated the claimant for, *inter alia,* low back pain, anxiety, diabetes, hypertension, and hyperlipidemia from November 2013 through October 2016 (Tr. 346-418, 461-571, 660-96).[3] Dr. Brown's physical examinations were normal through July 2014 (Tr. 346-93, 400-04). Beginning in September 2014 and continuing through October 2016, Dr. Brown consistently found moderate pain with range of motion testing in the claimant's lumbar spine, but the pain was severe in July 2015 and April 2016 (Tr. 394-99, 405-18, 461-571, 660-96). Additionally, Dr. Brown found tenderness in the claimant's lumbar spine in September 2014 and muscles spasms in her lumbar spine in October 2014, November 2014, and January 2016 (Tr. 398, 408, 413, 418, 560). Beginning in December 2015, the claimant consistently reported that her back pain was relieved by pain medication (Tr. 532-71, 660-96). As to Dr. Brown's mental status examinations, they were largely normal with observations that the claimant was anxious in June 2014, September 2014, and March 2016 (Tr. 387, 398, 545).

Dr. John Marlar performed a consultative physical examination of the claimant on April 29, 2015 (Tr. 428-37). Dr. Marlar found the claimant's lumbar spine was mildly tender to palpation with decreased flexion, but she had otherwise normal range of motion

---

[3] Dr. Brown's specific diagnoses for the claimant's low back pain included lumbago, sciatica due to displacement of lumbar disc, and intervertebral disc disorders with radiculopathy of lumbar region.

(Tr. 428-431, 436). Dr. Marlar noted the claimant had a safe and stable gait with appropriate speed, normal heel/toe walking and tandem gait, and indicated that a walking aid was not required (Tr. 436). Dr. Marlar assessed the claimant with low back pain, psoriasis, and diabetes (Tr. 436).

State agency physician Dr. Karl Boatman completed a physical RFC assessment on May 18, 2015 and found that the claimant could perform light work with frequent climbing ramps and stairs, balancing, kneeling, crouching, and crawling; occasional stooping; and never climbing ladders, ropes, or scaffolds (Tr. 104-07). His findings were affirmed on review (Tr. 122-24).

The record does not contain any imaging during the relevant period, but an October 2015 lumbar spine x-ray revealed mild degenerative changes (Tr. 600).

On October 4, 2016, Dr. Brown completed a physical RFC assessment as well as forms regarding unskilled work requirements, sedentary work requirements, absences from work, and a clinical assessment of pain (Tr. 643-51). He indicated on the sedentary work requirement form, *inter alia*, that the claimant could not stand/walk up to two hours in an eight-hour workday, sit up to six hours, lift/carry ten pounds, lift/carry five pounds repetitively, utilize both hands for manipulation, sustain activity at a pace and with the attention to task as would be required in the competitive workplace, or attend any employment on a sustained basis (Tr. 646). On the unskilled work requirements form, Dr. Brown stated, *inter alia,* that in a routine work setting, the claimant could not understand, remember, and carry out simple instructions; make simple work-related decisions, respond appropriately to supervision, co-workers, and work situations; or deal with changes

(Tr. 645). He indicated that basic physical work activities would increase the claimant's pain to such an extent that rest and/or medication would be necessary, that her pain would reduce her basic mental work activities to such a degree that rest and/or medication would be necessary, and that such medication would render her unable to function at a productive level of work (Tr. 644). On the RFC questionnaire, Dr. Brown indicated that the claimant could sit for twenty minutes at a time for less than hours total in an eight-hour workday, could stand for ten minutes at a time for less than two hours total in an eight-hour workday, and required a fifteen-minute period of walking every twenty minutes (Tr. 648-49). He also indicated the claimant would need unscheduled breaks every fifteen or twenty minutes lasting ten or fifteen minutes each (Tr. 649). Dr. Brown found that the claimant could rarely lift/carry less than ten pounds and could never lift/carry anything above twenty pounds (Tr. 649). Dr. Brown also found that the clamant could rarely crouch/squat, and could never twist, stoop, or climb ladders or stairs (Tr. 650). As to manipulative limitations, Dr. Brown found the claimant could use her hands to grasp, turn, and twist objects five percent of an eight-hour workday; use her fingers for fine manipulations three percent of an eight-hour work day; and could never reach (Tr. 650). He opined that the claimant would be absent from work more than four days per month (Tr. 650). Dr. Brown indicated that the limitations he found had been applicable since July 30, 2013 (Tr 651).

  At the administrative hearing, the claimant testified that she injured her back several years ago when a patient fell on her at work (Tr. 41). She further testified that she was unable to work because she could not stay in the same position for very long without pain, and because she takes pain medication (Tr. 59). The side effects of her pain medication

-7-

include drowsiness, dizziness, and nightmares, and her medications improve her pain, but do not completely alleviate it (Tr. 60-61). The claimant further testified that in 2013, she spent most of her day in a recliner or in bed due to the pain she experienced when sitting, standing, or walking (Tr. 51). She further stated she could walk for twenty minutes before needing to rest or sit down but could not lift a gallon of milk (Tr. 51-52, 55). The claimant rated her pain at seven with medication and at eight or nine without medication on a ten-point scale (Tr. 55). She stated that she was able to grocery shop but must lean on a cart and take breaks every ten or fifteen minutes (Tr. 56). The claimant indicated that she uses a cane four or five times per month, but that such use was not prescribed by a doctor (Tr. 59). As to her panic attacks, the claimant testified that she experiences them two or three times per month, they last ten or fifteen minutes, and she loses her breath, cries, shakes, and has trouble focusing during them (Tr. 57).

In her written opinion, the ALJ summarized the claimant's testimony and the medical record. In discussing the opinion evidence, the ALJ summarized the state agency physicians' opinions as well as Dr. Marlar's consultative opinion and then assigned them great weight without analysis (Tr. 26-27). She then gave little weight to Dr. Brown's opinions because: (i) the claimant testified that she supplied the answers to some of the forms, but could not remember which ones; (ii) there were no objective medical records to support his opinions; (iii) he did not define basic unskilled work requirements; (iv) he was not qualified to render an opinion as to the claimant's ability to perform unskilled work; (v) his opinion that the claimant could manage funds was contradictory to his unskilled work requirements form; (vi) he did not define sedentary work requirements; (viii) his

handling, fingering, and reaching limitations were not "remotely" supported by the record; and (ix) the use of a cane was not prescribed in the medical records (Tr. 27).

Medical opinions of a treating physician such as Dr. Brown are entitled to controlling weight if "'well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119. The factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ rejects a treating physician's opinion entirely, he must "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In this case, the ALJ adopted Dr. Brown's findings as to the claimant's inability to climb ladders and stairs, but rejected without explanation his limitations regarding the claimant's ability to sit, stand, walk, lift/carry, twist, stoop, and crouch/squat, as well as the claimant's need for unscheduled breaks, her anticipated work absences, her manipulative limitations, and all of her mental limitations (Tr. 643-51). It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of her own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). In addition to evaluating Dr. Brown's findings according to the appropriate standards, the ALJ should have explained why she found certain aspects of Dr. Brown's findings persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Additionally, the ALJ rejected Dr. Brown's opinions in large part because they were not supported by the objective medical records. Although the ALJ *did* specify the inconsistencies between the medical record and Dr. Brown's opinion as to the claimant's need for an assistive device, she did not specify any inconsistencies between the medical

-10-

record and Dr. Brown's *other* opinions as to the claimant's physical impairments and limitations or *any* of the claimant's mental impairments and limitations. Without an analysis specifically tied to evidence in the record, the ALJ's rejection of Dr. Brown's opinions is merely a conclusion in the guise of a finding and does not constitute substantial evidence in support of her decision. *See, e.g., Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.") [citation omitted].

Additionally, it was clearly improper for the ALJ to reject Dr. Brown's opinions upon speculation that he relied solely on the claimant's subjective statements in preparing some of his opinions. *See, e. g., Langley*, 373 F.3d at 1121 ("The ALJ also improperly rejected [the treating physician's] opinion based upon his own speculative conclusion that the report . . . was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for ... these findings. Nothing in [the treating physician's] reports indicates ... that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay*

-11-

*opinion.'"), quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) [emphasis in original].

Because the ALJ failed to properly evaluate the medical evidence, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 12th day of September, 2019.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**